803 So.2d 466 (2001)
Dorothy HAYES, Plaintiff-Appellee,
v.
Patricia MAXEY, Safeway Insurance Company and City of Shreveport, Defendants-Appellees.
No. 35,294-CA.
Court of Appeal of Louisiana, Second Circuit.
December 28, 2001.
Rountree, Cox, Guin & Achee, by Dale G. Cox, Shreveport, Counsel for Appellant, City of Shreveport.
Ronald J. Miciotto, Shreveport, Counsel for Appellee, Patricia Maxey.
Helene Melissa Sugar, Counsel for Dorothy Hayes.
Tracy L. Oakley, Ruston, Counsel for Safeway Insurance Company.
Before STEWART, KOSTELKA and DREW, JJ.
*467 DREW, J.
The City of Shreveport appealed the judgments in a pair of cases awarding damages to Dorothy Hayes and Patricia Maxey who sought recovery for injuries sustained in a relatively minor collision between a city bus and a 1993 Thunderbird driven by Maxey and occupied by Hayes. The judgment is affirmed.
In No. 35,294-CA, Dorothy Hayes sued Maxey, the driver of the car in which she rode; Safeway Insurance Company, Maxey's insurer; and the City of Shreveport. Shreveport answered and filed a motion to consolidate this matter with No. 35,295-CA, Maxey's action for damages against the City of Shreveport. Safeway and Maxey also answered Hayes' petition for damages. The record does not contain an order consolidating the matters for trial nor do the minutes contain any indication that a contradictory hearing was held on the motion to consolidate. La. C.C.P. art. 1561. However, the matters were tried together and one judgment captioned with both actions was filed in each record.

TESTIMONY
At the consolidated trial, photos of the scene, the plaintiffs' medicals and Maxey's insurance coverage were introduced without objection. The parties stipulated that Emergency Medical Technician Charles Parker would have testified that he responded to the scene at which only Dorothy Hayes claimed to be injured, but declined medical assistance at the scene. The accident report was also introduced without testimony by agreement of counsel.
Stanley Carpenter, a Sportran bus driver for the City of Shreveport for seventeen years, testified that the accident occurred on April 7, 1998 between 12:35 and 12:40 PM. Carpenter further stated that the incident occurred at the intersection of Portland and Laurel actually in the middle of Portland when he was making a left turn. Traveling west on Laurel, Carpenter stopped the bus at the stop sign at the intersection with Portland and opened the door, as required by state law, to watch for southbound traffic on Portland. He did not remember, but said he could have been talking to someone standing at the intersection. Carpenter was driving bus # 411 which the driver stated was 40 feet long, 102 inches (or 8.5 feet) wide and weighed 2,600 pounds. Although aware there were vehicles behind the bus, Carpenter said he did not know any had driven around the bus while he was stopped. He estimated he was stopped a minute to a minute and a half waiting for traffic to clear. After looking to the right, he closed the door (the bus will not move when the door is open). Then he checked his left mirror which he stated had no blind spots for traffic on his left. Carpenter testified the accident did not happen until he had left Laurel and was on Portland in the middle of his turn.
Further, he admitted he did not see the vehicle driven by Maxey and occupied by Hayes until the impact. Carpenter said he was looking to the left and traveling about 5 MPH. He estimated the west-bound lane on Laurel to be about 17 feet wide. Although Carpenter stated he did not recall, he acknowledged on cross-examination he could have had a conversation with a pedestrian while the bus was motionless. Although he was unable to identify her at trial, the bus driver stated the passenger in the auto said her knee was injured. Carpenter also asserted his bus was completely in the west-bound lane of travel while stopped at the stop sign. As Carpenter began his turn, he stated he put on his blinker and began his turn. He never physically turned to his left and looked over his shoulder at the lane beside the *468 bus. As the bus turned, the collision occurred and Carpenter saw the Maxey vehicle for the first time.
In responding to questions by the city's counsel, Carpenter said that the collision took place on Portland Street past (or on the south side of) the double yellow line in the center of Laurel Street. The bus driver was certain the left turn signal was working when he activated it because every driver must make a safety inspection of a bus before beginning each shift. Carpenter stated he left the bus where the impact occurred but that the driver of the car moved her vehicle prior to the arrival of the police. The damage to the bus was on the driver's side about half way down the side. Immediately on impact Carpenter stopped the bus, phoned his supervisors, and then exited the bus to check the situation. The driver informed him she was not hurt but the passenger stated she was injured. He saw no visible signs of injury.
Larry Blaine Ford, an adjuster with a claim service used by the city, testified he measured the west bound lane of Laurel from the innermost double yellow line to the curb and found the width of the lane to be 19 feet.
An LPN charge nurse, Patricia Maxey testified she was the driver and Dorothy Hayes was her passenger when the collision occurred. Maxey stated she had purchased her 1993 Thunderbird less than 24 hours before the accident. Her destination was a dollar store on Jewella and they were not in a hurry. Maxey traveled the street almost daily and was very familiar with the intersection. According to Maxey, she was traveling west with four or five cars between her and the bus ahead. She stated that the bus pulled over to the right side and stopped while the driver talked to a female pedestrian standing by the bus wearing a red shirt. During the conversation, approximately four cars passed beside the bus and turned left to cross the bridge on Portland Street. Maxey testified that the turn signal on the bus was not flashing when she drove beside the bus to turn also. Maxey told the court that while she was stationary, the bus struck her right passenger side bumper with an impact that moved the car. Maxey said the impact "didn't really hit hard." Maxey did not tell the police she was injured and declined treatment or an ambulance because she did not want the bill. However, she sought treatment for her shoulder and back injury at Willis Knighton North. The doctor ordered x-rays and gave Maxey prescription medication. Her attorney referred her to a chiropractor who treated her from April 8, 1998 until July 23, 1998 when he released her. She was restricted from bending, turning or lifting patients.
On cross-examination, Maxey stated she saw the bus come to a stop a few feet behind the stop sign. The four cars behind the bus also stopped. Maxey observed four or five cars proceed one at a time around the bus. She estimated that took between 15 and 20 seconds. She stopped directly behind the bus, not recalling if she saw brake lights. She saw no turn signal, but did observe the woman still talking to the driver. After four or five seconds, she activated her left turn signal and pulled out to pass the bus. Acknowledging there may have been a double yellow line on Laurel Street, Maxey was certain that her car did not cross over the yellow line, but the impact pushed her car over the line. Maxey stated the impact occurred in the west bound lane on the north side of the double yellow line while the bus was in the process of turning left with just a few inches of the front portion having reached Portland Street. Explaining that she was upset, Maxey agreed she had given a statement weeks *469 after the accident in which she said there were seven or eight cars between her vehicle and the bus. She also stated she told the doctor in the emergency room about her shoulder pain but could not remember if she had mentioned pain radiating down her back.
Employed at Schumpert as a clerk/aide, Dorothy Hayes, the guest passenger in the Maxey auto, gave testimony which corroborated Maxey's account of the accident. Hayes described the bus doors as opened and the woman standing outside the bus engaging in a conversation with the bus driver. Hayes confirmed that the impact was not very hard, but stated the force "picked us up, you know, and it was scary." Hayes said she had braced herself before impact and injured her right thigh and hip. Like Maxey, she refused the ambulance to avoid the bill, but went to the hospital to get checked out, since she was hurting. She also had x-rays and received medication. On referral of her attorney, she sought chiropractic care. From April 9 until June 1, the chiropractor treated her seven times.

REASONS FOR JUDGMENT
At the conclusion of the testimony and arguments of counsel, the trial court gave oral reasons for judgment indicating his credibility determinations and findings. Specifically, the parties were traveling west on Laurel Street when the bus driver approached the intersection at Portland and stopped as far over on the right as he could without the bus being up on an area off the road. Noting the road is wide, the court stated the uncontradicted testimony is that the lane was nineteen feet wide at the accident site. Further, there was ample room for two vehicles to travel abreast in the west-bound lane of Laurel.
The trial court found that the bus was stopped at the intersection near the stop sign where the driver engaged in a conversation with a pedestrian for some period of time. Although finding that no witness intentionally gave false testimony, the trial court observed there were different versions as to what happened and where the accident/impact occurred. The trial court concluded that the police accident report supported the plaintiffs' account that the accident occurred on Laurel Street. Specifically, the trial court found the accident happened closer to where the plaintiffs placed it than where the bus driver said it occurred.
The trial court accepted the bus driver's testimony that he looked, did not see the car, started to move and never saw the car until the accident occurred. The trial court believed the plaintiffs' testimony that they were in line behind the bus which had stopped. There was ample room for the car to drive within the west-bound lane beside the stationary bus. Noting there was no evidence of excessive speed, skid marks or screeching tires, the trial court held the vehicles were moving very slowly and Maxey did not drive around the bus rapidly.
According to the trial court, the cause of the collision was simple; i.e.,
the bus driver who had a lot to do and a lot of different directions to look and a lot of things going on, simply didn't see the car on his left and made a left turnstarted to make a left turn and struck the plaintiff's vehicle. I believe the cause of the accident was his failure to see what he should have seen at the time the accident occurred.
The trial court awarded Hayes special damages of $196.68 for Willis Knighton and $987.00 for chiropractic care. Finding her injuries to have healed within a month, the trial court set general damages for Hayes at $2000.00. The identical judgment contained in each record also rejected *470 Hayes's claim against Maxey and Maxey's insurer.
The trial court awarded Maxey special damages of $193.26 for Willis Knighton and $2,083.00 for her chiropractic care. Finding that the ill effects from this accident had resolved in July 1998, the trial court set general damages for Maxey at $4,500.00.

DISCUSSION
In Currie v. Myers, 32,633 (La. App.2d Cir.1/16/2000), 750 So.2d 388, this court noted that factual findings, including those on the issue of causation, cannot be disturbed on appeal unless they are manifestly erroneous. The appellate court does not assess whether the district court's factual findings were right or wrong but asks whether the fact-finder's resolution of the conflicting evidence was reasonable, in light of the record as a whole. When testimony on an issue conflicts, reasonable evaluations of credibility and inferences of fact should not be disturbed, even if the appellate court concludes that its own factual evaluations and inferences are as reasonable as those made by the trial court. The trial court's factual findings must be given great deference because the fact-trier has the superior capacity to assess the credibility of witnesses; only the finder of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Currie, supra.
The City of Shreveport's first contention on appeal is that the trial court erred in failing to apply La. R.S. 32:76 which states:
A. No vehicle shall at any time be driven to the left side of the highway under the following conditions:
* * *
(2) when approaching within one hundred feet of or traversing any intersection or railroad grade crossing;
* * *
B. The foregoing limitations shall not apply upon a one-way roadway or a multiple lane highway nor to the driver of a vehicle turning left into or from an alley, private road or driveway.
In the city's view, the trial court's finding that there was ample room for the Maxey car to pull alongside the stopped bus within the nineteen foot wide west-bound lane of Laurel effectively converted Laurel to a multiple lane highway to which 32:77 is inapplicable. Contrary to the city's assertion that the trial court made an error of law, the trial court's conclusion was based upon its factual findings that the events leading to the collision all took place within the west bound lane. Maxey did not drive on the left side of the roadway. Likewise, the city's argument that Maxey violated La. R.S. 32:77[1] by crossing the double yellow line on Laurel was the cause of the accident was rejected *471 based upon the trial court's foregoing factual finding.
However, the trial court reasonably and correctly determined that the simple and sole cause of this accident was the failure of the bus driver to look to his left and see what he should have seen.[2] Had he carefully examined his left side, rear-view mirror and/or looked to his left along the side of the bus he would have seen Maxey's vehicle alongside the bus before he pulled away from the curb and began his turn. The impact would not have occurred. The trial court's evaluations of credibility and inferences of fact were reasonable, supported by this record and entitled to great deference.

DECREE
Therefore, the judgment of the trial court is AFFIRMED with appellate costs (including preparation of the record for appeal) of $807.60 assessed against the City of Shreveport pursuant to La. R.S. 13:5112.
NOTES
[1] La. R.S. 32:77 provides:

A. The Department is hereby authorized to determine those portions of any highway where overtaking and passing or driving to the left of the roadway would be especially hazardous, and shall by appropriate signs or markings on the roadway indicate the beginning and end of such zones, and when such signs and markings are in place and are clearly visible to an ordinary observant person, every driver shall obey the directions thereof.
B. Where signs or markings are in place to define a no-passing zone as set forth in paragraph A, no driver shall at any time drive on the left side of the roadway within such zone, or on the left side of any pavement striping, designated to mark such no-passing zone, throughout its length.
[2] We specifically distinguish factually Duncan v. Safeway Ins. Co. of La., 35240, 35241 (La. App.2d Cir.10/31/2001), 799 So.2d 1 because the nervous, agitated driver attempted to drive around a left-turning motorist by making a sudden spontaneous move without warning.