900 So.2d 343 (2005)
Christopher BRYANT, Plaintiff-Appellant,
v.
Stephen L. NEWMAN, The Artesian Water Company, Inc., and Interstate Fire and Casualty Company, Defendants-Appellees.
No. 39,437-CA.
Court of Appeal of Louisiana, Second Circuit.
April 20, 2005.
*345 McKeithen, Ryland & Champagne, by Rebel Garnett Ryland, Dina F. Domangue, Columbia, for Appellant.
Steven Eric Soileau, Shreveport, for Appellees.
Before PEATROSS, DREW and LOLLEY, JJ.
DREW, J.
The plaintiff, Christopher Bryant, appealed the judgment dismissing his action for damages with prejudice and at his costs. The trial court found that Bryant was 100% at fault in causing the collision. Both vehicles were traveling west on the two-lane highway with a posted speed of 55 mph in Tensas Parish. Bryant's truck overtook Stephen Newman's slower moving truck and trailer. The wreck occurred when Bryant drove in the left lane to pass Newman, who began a left turn into the parking lot of a convenience store.
Bryant alleged that the trial court erred in considering his driving record unrelated to this accident, in finding him to be totally at fault while not assessing Newman with any fault, and in failing to award plaintiff damages for his injuries. Because we cannot say that the trial court was clearly wrong and manifestly erroneous in its factual findings, the judgment is affirmed.

TESTIMONY
Bryant testified:
 He was an independent satellite installation contractor for Comcraft.
 On August 29, 2003, he had a wreck on Highway 4 near Newellton and in front of B and B Treasures, a convenience store.
 As he was driving to Winnsboro, he came around a curve and saw a slow-moving vehicle, which he thought had just pulled onto Highway 4 from an adjoining highway.
 As he started to pass, the slow-moving vehicle made a left turn and struck his passenger side door. He lost control of the truck, which spun sideways, slid into a ditch, rolled over, and came to rest on the driver's side in the ditch.
 Nothing on the big slow truck, such as turn signal or brake lights, alerted Bryant that the truck was about to turn. Plaintiff assumed the truck had not gotten "up to speed yet."
 There was no oncoming traffic and no yellow lines prohibiting passing. Plaintiff was beside the big truck's trailer when the truck driver began his left turn and struck plaintiff's truck.
 Acknowledging that he stated at his deposition that he took no evasive action and did not know Newman was turning until the collision, Bryant said that he saw the vehicle moving left but did not know Newman was turning.
 He had almost finished passing the Newman truck, which was damaged on the front left hand bumper while his *346 vehicle was damaged on the passenger side door.
 He was able to climb out of the driver's side window and was not talking on his cell phone when the accident occurred.
 Bryant was driving the 55 mph speed limit when he saw the slow truck without blinkers or brake lights on Highway 4. About 100 feet behind the truck, Bryant moved into the left hand lane. Bryant did not need to accelerate to pass the truck.
 After the excitement died down, plaintiff had cramps in his neck. The next morning he awoke with a pounding headache and a neck so stiff he could hardly move it.
 He saw Dr. Turnley, who released him to return to work on November 17, 2003. Plaintiff earned an average of $870.00 per week and earned no money from August 29 until November 17. Physically, he still has neck problems but works through it.
 Thirty-five days passed before Bryant sought medical treatment and he told his employer he was unable to work because he did not have transportation. He did not report that he was injured. Bryant explained he had not seen the doctor who informed him he could not work due to his injury.
 Bryant informed coworkers Jason Bruton and Carl Young that he could not work due to his injury.
 While off work, he did maintenance work at the apartment complex where his fiancée, now wife, was the manager.
 When he returned to work a day or two after November 17, he was able to perform his full-time job as a satellite television installer, although he still had occasional charley horse symptoms.
In response to questions from the trial judge, Bryant stated:
 He had two speeding tickets since the wreck, but none before and he had never had a wreck. (He later explained he had two speeding tickets before the accident and a total of four, since he got his driver's license at age 17.)
 His neck pain started with a dull ache and turned into "real sharp searing pain and had a lot of heat in it."
 Bryant was familiar with the store where the crash occurred and described its operations.
 He saw the doctor after he hired his lawyer.
Steve Newman testified that he was driving a large Isuzu one-ton Party Ice truck and pulling a trailer (owned by Artesian Water Company and insured by Interstate Fire & Casualty Co.). After stopping at the intersection of Highways 128 and 4, Newman looked right on the long round curve, saw no traffic, and turned left onto Highway 4. He estimated his top speed at 40 mph because he knew he would be turning left into the convenience store located 0.3 miles from the intersection. He looked into his left side mirror but did not see Bryant's truck. Because of the distance Bryant's vehicle skidded, Newman opined that Bryant was "driving way too fast." Newman used his left turn signal, and his brake lights were working. Newman calculated he was traveling 10 to 15 mph as he began his turn.
As he turned, Newman heard the screeching brakes to his left, hit his brakes, and stopped. Newman stated that Bryant lost control of his vehicle. Newman's truck was stationary when Bryant's vehicle struck his, ricocheted off his door and front bumper, and went into the ditch. Newman never saw Bryant's vehicle before the crash and stated that his truck *347 was turned almost sideways at impact and was four to five feet over the center line. Newman estimated Bryant's truck traveled 50 feet after impact. Newman's truck was not moved by the impact. After he ascertained that Bryant was alright, Newman moved his truck and trailer out of the road. Newman's two passengers in the ice truck corroborated his account of the accident. Newman testified that Bryant told him he was in a hurry and should not have been passing.
The owner of the convenience store, Thomas Boone, testified he was 20 to 25 away feet from the door and walking toward his business when he heard the tires skidding and then the impact. The witness saw Bryant's truck bouncing off the ice truck into the ditch. The turn signal on Newman's ice truck was blinking. Boone estimated:
 the distance from the driveway to the point at which Bryant's truck came to rest on its side in the ditch was 30 feet;
 the ice truck was not as far into the left lane as Newman estimated;
 Bryant was traveling in excess of 55 mph prior to impact based upon the speed at which his truck traveled after the impact; and
 the tires' screeching lasted "half a second probably" before impact.
In charge of dispatching installation technicians for Comcraft, Lisa Hayman testified that Bryant initially told her he was not injured and that he could not work until his truck was repaired. Thereafter, he told her he found out the accident was not his fault so he was going to see a doctor. When she stated that she thought he was not hurt, he laughed. Later, when he came in wearing a neck brace, she asked what he was doing with the neck brace on and he smiled at her. She said she was joking with him. After submitting the doctor's release to return to work and returning to work, Bryant never informed the company he was having continued neck problems.

TRIAL COURT'S REASONS FOR JUDGMENT
At the conclusion of the trial, the court stated that it made credibility determinations. The trial court noted that it had itself inquired about plaintiff's driving record, which contrasted with defendant's (Newman). Plaintiff had two speeding tickets before and two speeding tickets after this collision. "I did not give that a whole lot of weight."
While Bryant testified he had real sharp searing neck pain the day after the accident, the court observed he did not seek medical treatment for 35 days. The trial court found credible the testimony of Bryant's wife, who reported Bryant was tough and did not like to take medication.
After recounting testimony of several witnesses, the trial court found that the defendant driver (Newman) did everything he was legally required to do and that his turn signal was working. Newman slowed to make his turn and applied his brakes, which were working. The trial court found that Bryant, the passing driver, failed to meet his burden of proof and concluded that plaintiff's speed was the sole cause of the accident.

DISCUSSION
Bryant argued the trial court improperly questioned about and incorrectly considered his driving records, which were prejudicial, irrelevant, and inadmissible, since prior or subsequent speeding tickets do not establish that he was speeding on this occasion. Although the trial court did elicit testimony from Bryant regarding his driving history, the judge specifically stated that he did not give Bryant's previous *348 and subsequent speeding tickets much weight.
Viewing the driving record evidence as incorrectly obtained, the proper inquiry for determining whether a party was prejudiced by a trial court's alleged erroneous action is whether the error, when compared to the entire record, had a substantial effect on the outcome. Hanna v. Roussel, 35,346 (La.App.2d Cir.12/5/01) 803 So.2d 261. The trial court's comments establish that information about Bryant's speeding tickets did not have a substantial effect on the outcome of the case. Instead, the trial court based its decision on determinations of the witnesses' credibility.
The failure to object to evidence, moreover, waives the objection to that evidence. The aggrieved party may not complain on appeal that the evidence was actually inadmissible. Nitro Gaming, Inc. v. D.I. Foods, Inc., 34,301 (La.App.2d Cir.11/1/00), 779 So.2d 817. The trial court and defense counsel obtained Bryant's testimony about his speeding tickets, without any objection from Bryant's attorney. This complaint is without merit.
When findings are based on credibility determinations regarding the witnesses, the manifest error-clearly wrong standard demands great deference to the trial court's findings; only the factfinder can be aware of the variations in demeanor and tone of voice that bear heavily on the listener's understanding and belief in what is said. When documentary or objective evidence is so contradictory to the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Absent the foregoing factors, when a trial court's decision is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Honeycutt v. State Farm Fire & Cas. Co., 39,301 (La.App.2d Cir.12/22/04), 890 So.2d 756.
If the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, supra.
Bryant argued that factual support was insufficient to support the trial court's findings of fact and that there was no evidence that he was speeding or that he caused the accident in whole or part. Bryant relied upon the inherent danger in a left turn and upon the presumption of liability against a left-turning motorist. In Duncan v. Safeway Ins. Co. of La., 35240, 35241 (La.App.2d Cir.10/31/01), 799 So.2d 1161, this court stated:
 both left-turning and passing drivers must exercise a high degree of care in executing their respective dangerous maneuvers; and
 a presumption of negligence is not applied to either driver.
Under La. R.S. 32:104, the left-turning motorist must signal his intent to turn at least 100 feet from the turning point and take steps to ensure that the maneuver can be made without endangering a passing vehicle, and a driver may not make a left turn unless it can be done without danger to normal overtaking traffic.
*349 The driver of an overtaking vehicle must be alert to the actions of the motorist ahead of him on the road. Before attempting to pass, the passing driver has a duty to ascertain from all circumstances of traffic, the lay of the land, and conditions of the highway that passing can be completed with safety. The turning motorist has the right to assume the following driver will observe all duties imposed by law and common sense. Duncan v. Safeway, supra. While not always mandatory, a driver of a motor vehicle shall, when reasonably necessary to insure safe operation, give audible warning with his horn. La. R.S. 32:351(A).
In Duncan v. Safeway, supra, 100% of the fault was placed upon the passing motorist when the trial court found the left-turning motorist had used his flasher to indicate a left turn. Both vehicles had been stopped. The passing motorist spontaneously and without warning attempted to pass the left-turning auto when the passing driver's nerves "got bad." The passing driver's agitation hindered her common sense and recognition of the impending left turn and was the sole cause of the accident.[1]
There was no expert testimony. After hearing the witnesses and parties, the trial court accepted as accurate the testimony of Newman and the witnesses who corroborated Newman's account of the mishap. Before turning onto the highway, Newman looked down Highway 4 and saw no approaching vehicles coming around the long, almost L-shaped curve. As he drove 0.3 miles to the store, he estimated his speed did not exceed 40 miles per hour. He knew his brake lights were in working order because he inspected them each morning before beginning his deliveries. Newman activated his left-turn signal and applied his brakes in preparation for the turn into the store lot. When he checked his left mirror for overtaking cars, he did not see Bryant. While Newman's truck was stationary, Bryant's vehicle skidded out of control into Newman's truck and then into the ditch.
Although we might well have weighed the evidence differently and reached a somewhat different result if acting as the trier of fact, we cannot say that the trial court's decision was unreasonable based upon the foregoing evidence. Newman was driving correctly and cautiously and activated his left-turn signal a good distance from the turn. Bryant was careless and approached from the rear at a high speed without noting the brake lights and turn signal on Newman's vehicle. Interestingly, the store owner estimated that Newman's truck was not as far into the left lane as Newman estimated. A careful driver could perhaps have avoided the crash altogether by steering around Newman's stationary truck had he not lost control of his own truck. Had Bryant sounded his horn in a reasonable manner before commencing his passing, Newman may well have avoided being hit by Bryant. See La. R.S. 32:351. A.
The trial court was neither clearly wrong nor manifestly erroneous in deciding that Bryant was solely responsible for *350 this accident. His speed and inattention led to his hitting Newman's truck and landing in the ditch.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed at plaintiff's costs.
AFFIRMED.
NOTES
[1] We specifically distinguish our opinion in Hayes v. Maxey, 35,294 (La.App.2d Cir.12/28/01), 803 So.2d 466, in which a left-turning bus driver was 100% at fault. The bus driver pulled to a curb at an intersection, opened the door and talked to a woman standing at the stop sign. While the bus was stationary, several other cars drove to the left of the bus and turned left. The plaintiff also drove to the left side of the bus. While plaintiff was stopped beside the bus, the bus pulled away from the curb to turn left and struck plaintiff's auto. The sole cause of the accident was the failure of the bus driver to look to his left and see what he should have seen before starting his turn.