WILLIAMS, J.
hThe plaintiff, Sylvester Williams, appeals a judgment in favor of the defendants, The Travelers Indemnity Company, Joseph Coleman and Sheriff Jay Russell. The trial court dismissed the plaintiffs claims, finding that Coleman was not at fault in causing the motor vehicle accident. For the following reasons, we affirm.
*438 FACTS
On September 16, 2013, Sylvester Williams was operating a tractor with a bush hog attachment while performing his duties as an employee of the landscaping department of the City of Monroe. ' After finishing his first job of the day, Williams drove the tractor east on Richwood Road No. 1 toward his next assignment and he intended to turn left onto Reddix Lane, which ends at Richwood Road No. 1 (“Richwood”) in a T-intersection. Both of these roads are narrow two-lane roads and this segment of Richwood is marked with yellow dashed lines. At that time, Ouachi-ta Parish Sheriffs Deputy Joseph Coleman was driving a van east on Richwood transporting work release prisoners. Deputy Coleman drove one car-length behind the tractor for a distance of approximately one-half mile waiting for an opportunity to pass the tractor, which was proceeding at a speed of 15-20 miles per hour.
As the vehicles approached the intersection with Reddix Lane, the tractor slowed to approximately 5-10 miles per hour and Deputy Coleman thought that the tractor was moving right onto the shoulder of Richwood. Coleman then moved into the westbound lane and accelerated to pass the tractor, which began turning left onto Reddix Lane. The tractor’s front tire | ^struck the rear passenger side of Coleman’s van as it passed the tractor in the intersection. The impact caused minor scuff-mark damage to the vehicles and Williams sustained a soft tissue injury.
The plaintiff, Sylvester Williams, filed a petition for damages against the defendants, Joseph Coleman, Ouachita Parish Sheriff Jay Russell and his insurer, The Travelers Indemnity Company. After a trial, the court issued oral reasons for judgment, finding that Coleman could reasonably rely on the road markings which indicated passing was allowed and that Williams should have been able to avoid the accident if he had looked before turning left, since the van had almost completely passed the tractor before the collision. The trial court rendered judgment dismissing plaintiffs claims. The plaintiff appeals the judgment.
DISCUSSION
The plaintiff contends the trial court erred in assessing him with 100% fault in causing the accident. Plaintiff argues that Coleman was at fault because of his negligence in attempting to pass a left-turning vehicle.
The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance. LSA-R.S. 32:73. A following motorist may not attempt to pass a leading motorist when approaching within 100 feet of any intersection. LSA-R.S. 32:76. A left-turning driver must give a signal of his intent at least 100 feet from the turning point and shall not turn until such movement can be made with reasonable safety. LSA-R.S. 32:104.
A motorist has a duty to keep his vehicle under control and to hmaintain a proper lookout for hazards. Harrell v. City of Shreveport, 47,011 (La.App.2d Cir.5/23/12), 92 So.3d 1180. The left-turning motorist and the overtaking, passing motorist must exercise a high degree of care as they are engaged in dangerous maneuvers. Bryant v. Newman, 39,437 (La.App.2d Cir.4/20/05), 900 So.2d 343; Thibodeaux v. Ace American Ins. Co., 2013-577 (La.App. 3rd Cir.11/27/13), 127 So.3d 132. In general, the court will not apply a presumption of negligence to either driver. Bryant, supra; Duncan v. Safeway Ins. Co. of Louisiana, 35,240 (La.App.2d Cir.10/31/01), 799 So.2d 1161.
*439 A driver must make a proper observation that the left turn can be made without endangering an oncoming or passing vehicle. Bamburg v. Nelson, 313 So.2d 872 (La.App. 2d Cir.), writ denied, 318 So.2d 57 (La.1975); Kilpatrick v. Alliance Casualty and Reinsurance Co., 95-17 (La.App. 3rd Cir.7/5/95), 663 So.2d 62. In addition to giving a signal, the left turning driver must look behind his vehicle immediately before the turn is attempted to ascertain whether the maneuver can be executed safely. Bamburg, supra. The driver of a following vehicle must be alert to the actions of motorists preceding him on the highway. Duncan, supra-, Kilpa-trick, supra. Specifically, the overtaking motorist has a duty to ascertain from all of the circumstances of traffic that the passing maneuver can be completed with safety. Bryant, supra-, Thibodeaux, supra.
 In allocating fault, the trial court must consider the nature of each party’s conduct and the extent of the causal relationship between that conduct and damages. Harrell, supra. The trial court’s apportionment of [¿fault is a factual determination subject to the manifest error standard of review. Harrell, supra; Thi-bodeaux, supra.
In the present case, Stan Felts, a sergeant with the Ouachita Parish Sheriffs Office, testified that he investigated the accident and took photographs at the scene. Sgt. Felts stated that there was a yellow broken line on Richwood indicating that both directions of travel are allowed to pass when safe. Sgt. Felts acknowledged that this road marking conflicts with the statute that prohibits passing within 100 feet of an intersection. Sgt. Felts testified that the left front tire of the tractor was scuffed or scratched and that there was a rubber scuff mark on the right rear quarter panel of the van, which did not have any dents. Sgt. Felts stated that if a passing vehicle has “overtaken the passing lane” then the left-turning vehicle may not enter that lane until it is clear.
Sylvester Williams testified that shortly before the accident, he was driving a tractor east on Richwood with the intent to turn left at Reddix Lane. Williams stated that the tractor was equipped with flashing lights and turn signals that were working on the day of the accident, but the tractor did not have side or rearview mirrors. Williams explained that he was required to use the flashing lights when driving the tractor on a public road. Williams testified that while driving toward the intersection, he had been looking over his left shoulder “all the time” for traffic, but never saw the van before the collision. Williams estimated that the tractor was traveling at a speed of 15 to 20 miles per hour on Richwood and then slowed to approximately 5-10 miles per hour before starting the left turn. He testified ftthat the tractor was between 15 to 30 feet from the intersection when he activated the left turn signal. Williams stated that the tractor’s left front tire hit and rubbed against the van behind the right rear tire of the van. He testified that there was a scrape mark on the tractor tire, but no physical damage to the tractor. Williams stated he had no idea the van was behind the tractor until he turned left and collided with the van, which had almost completely passed the tractor at the time. Williams speculated that Coleman must have been traveling “pretty fast in order for him to get up on me and pass me ... like he did[.]”
Deputy Joseph Coleman testified that while driving a van east on Richwood he followed one car-length behind the tractor driven by Williams for a distance of approximately one-half mile and observed that the tractor’s flashing lights were not activated. Deputy Coleman stated that as the vehicles approached the intersection *440 with Reddix Lane, the tractor slowed to approximately 5 miles per hour and moved to the right so that the tractor’s right tires were on the grassy shoulder of the road. Deputy Coleman testified that while he was behind the tractor, the other driver did not make any signal to indicate that he wanted to turn left. Deputy Coleman stated that he thought the tractor was going to stop and so' he moved into the westbound lane of Richwood to pass at an approximate distance of 25 to 50 feet from the intersection. Deputy Coleman testified that he accelerated and had almost completed his pass when he felt a bump as the tractor made contact with the van. He stated that as a result of the impact, there was a black scuff mark behind the right rear tire of the van, which did not have | r,any dents or scratches from the accident. Deputy Coleman testified that he never saw Williams look behind him to check for traffic even though the tractor did not have any mirrors. Deputy Coleman stated that as he passed the tractor, he looked straight ahead and did not glance to the right to look at the tractor.
In his appellate brief, Williams argues that Coleman should have been assessed with fault because he attempted to pass the tractor within 100 feet of the intersection in violation of the statute. However, Sgt. Felts testified that the road markings in that area of Richwood indicate that traffic in either direction is allowed to pass if safe to do so. Additionally, there was no evidence that signs were posted to mark the area as a “no passing zone.” Based upon the evidence presented, we cannot say the trial court erred in finding that despite the general statutory prohibition on passing within 100 feet of an intersection, Coleman was not negligent in reasonably relying on the specific markings in that area of the roadway indicating that passing was allowed. Thus, Williams’ argument lacks merit.
The trial court was required to choose between two conflicting versions of the accident. Williams testified that the tractor’s flashing lights were operating and that he activated a left turn signal before turning. In contrast,. Coleman testified that the tractor’s lights were not flashing and that Williams did not signal a left turn before the van entered the passing lane. The court reasonably gave less credibility to Williams’ testimony that he looked back for traffic before turning, but never saw the van until the collision occurred.
|7The record shows that Coleman followed behind the tractor for some distance, looked for oncoming traffic and when he saw the tractor slow to 5 miles per hour without signaling a left turn, he then proceeded with his passing maneuver. In contrast, the testimony indicates that Williams gave a left turn signal, if at all, only after Coleman had entered the passing lane. Significantly, Williams’ statement that he did not see the van before impact demonstrates that he failed to look to the rear of the tractor to see if the other lane was clear immediately before beginning his left turn.
After reviewing this record, we cannot say the trial court erred in finding that Williams was in the best position to avoid the accident if he had looked for traffic before turning. Thus, the evidence presented supports the trial court’s determination that Williams failed to establish Coleman’s fault in causing the accident. Consequently, the assignments alleging error in the court’s allocation of fault lack merit. In reaching this conclusion, we pretermit a discussion of the issue of damages.
CONCLUSION
For the foregoing reasons, the district court’s judgment is affirmed. Costs of *441 appeal .are assessed to the appellant, Sylvester Williams.
AFFIRMED.