# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-284


**MANDY HATMAN**

**VERSUS**

**MITCHELL MILLER, AIX SPECIALTY INSURANCE COMPANY, AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. C-18-1513
HONORABLE D. JASON MECHE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## CHARLES G. FITZGERALD
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, John E. Conery, and Charles G. Fitzgerald, Judges.


**AFFIRMED AS AMENDED.**

**Harry J. Philips, Jr.**
**Lauren R. Hadden**
**Taylor, Porter, Brooks & Phillips LLP**
**Post Office Box 2471**
**Baton Rouge, Louisiana  70821-2471**
**(225) 387-3221**
**Counsel for Defendants/Appellants:**
**Mitchell Miller and**
**AIX Specialty Insurance Company**

**Joseph J. Long**
**251 Florida Street, Suite 308**
**Baton Rouge, Louisiana  70801**
**(225) 343-7288**
**Counsel for Plaintiff/Appellee:**
**Mandy Hatman**

**FITZGERALD, Judge.**

This appeal stems from a motor vehicle accident between a passing pickup truck and a left-turning sprayer tractor. The only issue before us is the trial court's allocation of fault.

### FACTS AND PROCEDURAL HISTORY

On a picture-perfect day in April 2017, Benjamin Hatman was headed south on Prairie Rhonde Highway in St. Landry Parish. He was driving his Ford F-250 pickup truck. His wife, Mandy Hatman, and daughter were passengers.

At the same time, Mitchell Miller was also headed south on Prairie Rhonde Highway. Mitchell was driving a rather large sprayer tractor, and he was just ahead of Benjamin's pickup truck as the two vehicles approached the intersection with School Road. Prairie Rhonde Highway is a two-lane rural highway with no shoulder. School Road is basically the same.

Just before the two vehicles reached the intersection, Benjamin attempted to pass Mitchell's tractor on the left. Unaware of this, Mitchell began turning left (intending to turn onto School Road), and a collision ensued. Mandy suffered injuries to her neck and back.

Many months later, Mandy filed a petition for damages against several defendants, including Mitchell and his insurer, AIX Specialty Insurance Company. A bench trial was held in March 2021. In essence, the trial court found that Mitchell was 100% at fault for causing the accident, and Mandy was awarded $24,415 in total damages. This ruling was reduced to a written final judgment. Mitchell and AIX (Defendants) jointly appealed.

In their sole assignment of error, Defendants assert that "[t]he trial court committed legal error when it failed to consider and/or give any weight to the duties imposed on a passing motorist under Louisiana Revised Statute 32:76, and as a

result, improperly allocated 100% of the fault for this accident to defendant, Mitchell Miller."

## LAW AND ANALYSIS

Oversimplifying slightly, Defendants argue that de novo review is warranted because the trial court erred in its application of the law, and that error materially affected the outcome of the case. We disagree. The record does not reflect legal error. We will therefore review the trial court's allocation of fault using the manifest error–clearly wrong standard of review. *See Duncan v. Kansas City S. Ry. Co.*, 00-66, pp. 10-11 (La. 10/30/00), 773 So.2d 670, 680 ("[A]n appellate court should only disturb the trier of fact's allocation of fault when it is clearly wrong or manifestly erroneous.").

Because we are reviewing the trial court's allocation of fault, our determination of whether the trial court manifestly erred is guided by the factors set forth in *Watson v. State Farm Fire and Casualty Insurance Co.*, 469 So.2d 967 (La. 1985). There, the Louisiana Supreme Court explained that

> various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

*Id.* at 974.

If an appellate court finds a clearly wrong apportionment of fault, it should adjust the award but "only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion." *Duncan*, 773 So.2d at 680-81. The above *Watson* factors also "guide the appellate

2

court's determination as to the highest or lowest percentage of fault that could reasonably be assessed." *Id.* at 681.

Turning now to the duties imposed on both a left-turning driver and a passing driver. Louisiana Revised Statutes 32:104 addresses the left-turning driver. Essentially, this driver must signal his intent to turn at least 100 feet before turning; this driver must also ensure that the turn can be made safely.

On the other hand, the relevant statutory duties of the passing driver are found in La.R.S. 32:73, 32:75, and 32:76. The first of these statutes, La.R.S. 32:73(1), states that "the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance, and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle." Next, La.R.S 32:75 provides that no driver shall attempt a left-lane pass of "another vehicle proceeding in the same direction unless such left side is clearly visible . . . to permit such overtaking and passing to be completely made without interfering with the safe operation of . . . any vehicle overtaken." And finally, La.R.S. 32:76(A)(2) states that "[n]o vehicle shall at any time be driven to the left side of the highway . . . when approaching within one hundred feet of or traversing any intersection[.]"

In sum, "the left-turning motorist and the overtaking and passing motorist must exercise a high degree of care because they are engaged in dangerous maneuvers." *Kilpatrick v. Alliance Cas. and Reinsurance Co.*, 95-17, p. 4 (La.App. 3 Cir. 7/5/95), 663 So.2d 62, 66, *writ denied*, 95-2018 (La. 11/17/95), 664 So.2d 406.

Now to the specific arguments of each party. Defendants assert that the trial court erred in focusing on the general duties of passing motorists—such as ensuring that the passing maneuver can be safely executed—while ignoring the more specific duty that prohibits a motorist from attempting to pass on the left within 100 feet of an intersection. *See* La.R.S. 32:76(A)(2). Defendants point out that Benjamin

3

admitted that he was aware of La.R.S. 32:76(A)(2); that he nevertheless attempted to pass Mitchell's tractor within 100 feet of the intersection with School Road; and that he was ticketed for that specific violation. With all this, Defendants insist that Benjamin was at least partially at fault in causing the accident.

The plaintiff, Mandy Hatman, disagrees. She argues that while it is true that Benjamin attempted to pass within 100 feet of an intersection, the trial court reasonably determined that such passing maneuver did not cause the accident. As Mandy puts it, the accident would not have happened if Mitchell had simply looked to his left before turning his tractor in that direction.

At trial, Benjamin testified that the accident occurred at about 10:00 a.m. The weather that morning was perfect, and he was trying to leave town for a family vacation. He explained that he decided to pass Mitchell's slow-moving tractor as soon as he came up behind it. Benjamin noted that the centerline on this part of Prairie Rhonde Highway is marked with dashed lines, rather than a solid no-passing line, and there are no signs for the intersection with School Road. He acknowledged being familiar with this stretch of the highway because he lived less than two miles from where the accident occurred. Benjamin also acknowledged having a commercial driver's license, and he knew not to pass within 100 feet of a highway intersection; he also knew to flash his lights and honk his horn before making a pass.

Benjamin explained that he made two attempts to pass Mitchell's tractor. Both times he eased into the left lane, flashed his lights, and honked his horn. However, Benjamin abandoned his first attempt because the tractor moved towards the middle of the roadway as it approached a narrow bridge. After both vehicles crossed this bridge, Benjamin began his second passing attempt. Again, he moved back into the left lane (flashed his lights and sounded his horn), and then he accelerated by five to ten miles per hour. According to Benjamin, Mitchell reacted by steering the tractor a few feet to the right. Benjamin also pointed out that

4

Mitchell's left turn signal was not blinking. All of this, Benjamin explained, confirmed his belief that the passing maneuver could be safely accomplished.

Benjamin had almost completed the pass when Mitchell began turning his tractor to the left. The tractor's left front tire rammed into the right side of Benjamin's pickup truck. The impact caused the pickup to skid off the highway, roll onto its side, and slam into a drainage ditch located just a few feet off the roadway. Benjamin admitted that the accident occurred within 100 feet of the intersection with School Road. He also admitted that he was ticketed for violating La.R.S. 32:76(A)(2).

Mandy Hatman agreed that Benjamin made two attempts to pass Mitchell's sprayer tractor. She testified that during Benjamin's second attempt, Mitchell moved his tractor several feet to the right. She also stated that the tractor did not have its left blinker on when Benjamin attempted to pass it.

Mitchell, in turn, testified that the accident occurred while he was driving the sprayer tractor to his next jobsite. According to Mitchell, the sprayer tractor is a large piece of machinery designed to apply chemicals to agricultural crops. He explained that there is a blind spot in the left sideview mirror, and that the rearview mirror did not pick up vehicles that trailed too closely behind him. Mitchell also explained that the tractor is equipped with signal lights, blinking lights, a warning triangle, and a sign disclosing the tractor's maximum speed of "30 M/H." The cabin of the tractor, Mitchell noted, is enclosed to keep the driver protected from the chemicals being sprayed. But this makes it hard to hear exterior noises, such as horn blasts from other vehicles.

Just before the accident, Mitchell reflected that he was traveling at thirty miles per hour. He began slowing down after crossing the bridge because he intended to turn left onto School Road, which was only about 500 to 600 yards away. He checked his mirrors and engaged his left blinker. Then, as soon as he started turning

5

to the left, he felt Benjamin's pickup truck collide with the tractor's left rear tire. Mitchell denied seeing Benjamin's vehicle at any time leading up to the accident. Mitchell also denied steering the tractor a few feet to the right before starting his left turn.

Kenneth LaFleur witnessed the accident. He was driving in the opposite direction on Prairie Rhonde Highway. He stated that he saw Benjamin's truck make two attempts to pass Mitchell's tractor. Kenneth thought that Benjamin had plenty of room to safely complete the pass. Kenneth testified that he did not see any flashing lights on the tractor. And based on his observations, he believed that the accident was caused by Mitchell.

A diagram from the police report shows that the accident occurred at the intersection of Prairie Rhonde Highway and School Road. At that location, Prairie Rhonde Highway is marked with a dashed yellow line. As depicted in the diagram, Benjamin's pickup truck was fully in the left lane at the time of the collision, and the initial impact occurred when the tractor's left front tire struck the right side of Benjamin's truck.

Thirty-nine photographs of the accident scene were also admitted into evidence. These photographs confirm that there is no shoulder on Prairie Rhonde Highway. They also show that on the day of the accident, the intersection with School Road was clearly visible from the bridge that both vehicles crossed immediately before Benjamin began his second attempt to pass Mitchell's tractor.

Turning now to the trial court's ruling. In its reasons for judgment, the trial court initially noted:

> At this particular intersection, the road is designated with a dashed yellow line, not a solid yellow line. The court will also note that there is no other indication that this was a no passing zone. In other words, the court will find there is nothing that prohibits a vehicle from passing another vehicle here other than, perhaps the location of the intersecting road[.]

The trial court found that Benjamin's testimony was credible. It believed his version of the accident. The trial court also believed the testimony of the plaintiff, Mandy Hatman, and the eyewitness, Kenneth LaFleur. In contrast, the court expressed doubts about the accuracy of Mitchell's testimony. Ultimately, the trial court found Mitchell "to be 100% at fault for the accident that forms the basis of this litigation."

In support, the trial court addressed the statutory duties of left-turning and passing drivers, including the duty imposed by La.R.S. 32:76(A)(2) ("No vehicle shall at any time be driven to the left side of the highway . . . when approaching within one hundred feet of or traversing any intersection[.]"). The trial court also cited, among other cases, *Williams v. Travelers Indemnity Co.*, 49,961 (La.App. 2 Cir. 7/22/15), 171 So.3d 436; and *Hill v. State Farm Mutual Automobile Insurance Co.*, 19-395 (La.App. 3 Cir. 11/13/19), 283 So.3d 629.

In *Williams*, the second circuit affirmed the trial court's finding that a left-turning driver was 100% at fault for an accident with a passing motorist, even though the passing motorist was attempting to pass within 100 feet of an intersection. While the facts in *Williams* are similar to the facts of this case, there are many important differences. Here are a few examples. First, the passing driver in *Williams* was not ticketed for violating La.R.S. 32:76(A)(2). Second, the investigating officer in *Williams* essentially testified that the passing driver did not cause the accident. And third, there was no indication of any extenuating circumstances which might have required the passing driver in *Williams* to proceed in haste; Benjamin Hatman was trying to leave town for a vacation.

Similar facts were presented in *Hill*, 283 So.3d 629. There, the trial court allocated 95% fault to the passing driver and the remaining 5% to the left-turning driver. On appeal, this court reallocated the fault between the parties to 50% each. The accident in *Hill*, like our case, occurred within 100 feet of an intersection. But

7

unlike our case, the passing driver in *Hill* was not ticketed under La.R.S. 32:76(A)(2); the investigating officer explained why the passing driver did not violate La.R.S. 32:76(A)(2); and there is no indication that the passing driver possessed a commercial driver's license or was otherwise aware of the danger involved in passing within 100 feet of a highway intersection.[1]

In the end, Benjamin admitted that he lived less than two miles from where the accident occurred; that he was trying to leave town for a vacation; that he holds a commercial driver's license; that he knew not to pass within 100 feet of a highway intersection; that he nevertheless attempted to pass Mitchell's sprayer tractor within 100 feet of the intersection with School Road; and that in doing so he was ticketed for violating La.R.S. 32:76(A)(2).

Louisiana Revised Statutes 32:76(A)(2) was intended to avoid what occurred here: an automobile accident at a highway intersection. And while "[t]he doctrine of negligence per se has been rejected in Louisiana . . . [,] statutory violations [do] provide guidelines for civil liability." *Galloway v. State Through Dep't of Transp. & Dev.*, 94-2747, p. 5 (La. 5/22/95), 654 So.2d 1345, 1347 (citations omitted).

Based on all this, we conclude that the accident and resulting injuries would never have happened but for the combined negligence of both drivers. Our brethren below clearly erred in determining that Mitchell was 100% at fault. Thus, in considering the entire record, along with the *Watson* factors, we find that the highest apportionment of fault that the trial court could have reasonably assessed against Mitchell was 50%. We therefore apportion fault 50% to Mitchell and 50% to Benjamin.

---

[1] In *Hill*, 283 So.3d at 635, this court commented that "Louisiana jurisprudence has held this statute [La.R.S. 32:76] inapplicable with respect to contributory negligence when the presence of a dotted line is indicated and there are no signs indicating a 'no passing zone.'" The quoted language should not be interpreted as the law of this circuit. Rather, in a review of comparative fault, the applicability of this statute (or any statute) is case specific.

**DECREE**

For the above reasons, we amend the judgment to reallocate fault 50% to Mitchell Miller and 50% Benjamin Hatman. As a result, we also amend the judgment in favor of Mandy Hatman by reducing the damages award by 50% for a total of $12,207.50 against Defendants, Mitchell Miller and AIX Specialty Insurance Company, in solido. The judgment of the trial court is affirmed in all other respects. Costs of this appeal are assessed 50% against the plaintiff, Mandy Hatman, and 50% against Defendants, Mitchell Miller and AIX Specialty Insurance Company.

**AFFIRMED AS AMENDED**.